**WEST, Secretary of Interior, et al. v. LYDERS.**

Court of Appeals of District of Columbia.
Argued October 9, 1929. Decided
November 4, 1929.

No. 4783.

O. H. Graves, of Washington, D. C., for appellants.

Justin Morrill Chamberlin and C. F. R. Ogilby, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellee, plaintiff below, filed a bill in equity in the Supreme Court of the District of Columbia to secure a restraining order against the Secretary of the Interior and the Commissioner of the General Land Office, enjoining them from canceling or rejecting plaintiff's location and selection of a tract of land known as Whaler Island in the harbor of Crescent City, Cal., and from issuing a patent thereto to the county of Del Norte, Cal., and requiring defendants to give full legal force and effect to plaintiff's selection thereof, excluding from consideration certain executive orders withdrawing the island from location and settlement, and also an act of Congress authorizing the Secretary of the Interior to patent the island to Del Norte county.

From a decree granting the injunction the case comes here on appeal.

It is alleged that the land involved, at the time plaintiff made his selection, was unsurveyed, unoccupied, nonmineral public land of the United States. It consists of about three and one-half acres, known as Whaler Island, situated in Crescent City Bay, Del Norte county, Cal.

Plaintiff, on January 6, 1927, filed what is known as Valentine scrip in the local land office, selecting Whaler Island. On January 28 following, the President withdrew this island from settlement, sale, location, entry, or other form of appropriation, subject, however, to existing rights pending classification and in aid of legislation. Under a second executive order dated February 12, 1927, Whaler Island was withdrawn "in aid of legislation and in connection with the improvement of the harbor at Crescent City, California."

March 4, 1927 (44 Stat. 1845), Congress passed an act authorizing the Secretary of the Interior to patent the land in question to the county of Del Norte for the purposes of a public wharf; the Secretary being directed to take the necessary action to carry out the purposes of the act. Thereafter the Commissioner of the General Land Office rejected plaintiff's selection, which action was affirmed by the Secretary. A rehearing was denied. Thereupon the present bill for injunction was filed.

In the decree awarding injunction, the defendants are restrained "from issuing a patent to the said Whaler Island or any part thereof to the county of Del Norte, California, pending final determination by the defendants of the rights of the plaintiff to the said Island, as prayed in plaintiff's bill of complaint"; and defendants are further enjoined to give full legal force and effect to plaintiff's selection and location, and in disposing thereof to exclude from consideration the executive orders of January 28, 1927, and February 12, 1927, and the Act of Congress of March 4, 1927.

Valentine scrip was issued under authority of the Act of Congress of April 5, 1872, 17 Stat. 649. It was issued in lieu of certain lands situated within the state of California known as the Rancho Arroyo de San Antonio, which, under the terms of the act, Valentine was required to execute and deliver to the Commissioner of the General Land Office a deed conveying said lands to the United States, and, "in lieu thereof, the claimant, or his legal representatives, may select, and shall be allowed, patents for an equal quantity of the unoccupied and unappropriated public

lands of the United States, not mineral, and in tracts not less than the subdivisions provided for in the United States land laws, and, if unsurveyed when taken, to conform, when surveyed, to the general system of United States land surveys; and the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, shall be authorized to issue scrip, in legal subdivisions, to the said Valentine, or his legal representatives, in accordance with the provisions of this act."

■ Plaintiff in his bill sets forth in detail the steps taken by him in making his selection of the land in question, and avers that "in every way plaintiff complied with the existing rules and regulations of the General Land Office and the Department of the Interior in respect of such selection." These facts are well pleaded, and their truth is admitted by the motion to dismiss. The sole question, therefore, left for determination is whether or not the attempted withdrawal of the land from the public domain by the executive orders and the subsequent act of Congress can deprive the plaintiff of any vested right which he may have acquired in making the selection.

■ Valentine scrip was issued by the government to right a wrong, in payment of a just obligation which the government owed the grantee. In this respect it differs from the ordinary land scrip issued to soldiers, agricultural colleges, etc., which represent merely gifts or gratuities on the part of the government. The satisfaction of the government's obligation to Valentine by the issue of this scrip gave him a vested right to the selection of any unsettled or unappropriated public land in the United States in quantity equal in acreage to that which he had conveyed to the government. Consequently, when he, or his assigns, made a selection of unappropriated public lands, he was merely exercising the vested right which he had already acquired from the government, and the vested right acquired, when completed in a valid selection, relates, not merely to the date of selection, but back to the date of the issuance of the scrip.

■ If the admissions above stated can be supported upon further investigation by the Department, it would seem plaintiff has complied with all the requirements of the Department necessary to entitle him to a patent. It is settled law that, "where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued. The execution and delivery of the patent after the right to it has become complete are the mere ministerial acts of the officers charged with that duty." Simmons v. Wagner, 101 U. S. 260, 261, 25 L. Ed. 910.

In the case of Wilcox v. Jackson, 13 Pet. 498, 513, 10 L. Ed. 264, the Supreme Court said: "But we go further, and say, that whensoever a tract of land shall have been once legally appropriated to any purpose, from that moment, the land thus appropriated becomes severed from the mass of public lands; and that no subsequent law, or proclamation, or sale, would be construed to embrace it, or to operate upon it; although no reservation were made of it." And, in the case of Leavenworth R. R. Co. v. United States, 92 U. S. 733, 23 L. Ed. 634, 639, the court, quoting with approval the language given in the Wilcox Case, added: "It may be said that it was not necessary * * * in deciding the case to pass upon this question; but, however, this may be, the principle asserted is sound and reasonable, and we adopt it as a rule of construction."

This rule of construction has been followed in numerous cases, and was reaffirmed in Payne v. Central Pac. R. R. Co., 255 U. S. 228, 41 S. Ct. 314, 316, 65 L. Ed. 598, where an injunction was sought to restrain the Secretary from canceling a selection of indemnity land under a railroad land grant. The Department defended on the ground that the land had been included in a subsequent withdrawal for power site purposes. The court, however, sustained the selection, with the observation that "the rule applicable in such a situation is that—'A person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof.' Wirth v. Branson, 98 U. S. 118, 121 (25 L. Ed. 86); Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 432, 12 S. Ct. 877, 36 L. Ed. 762."

■ It is true that in these cases the courts were dealing with executive orders of withdrawal and not with an attempted segregation and disposition of the land by act of Congress. We are unable, however, to distinguish any difference between the effect of an executive order of withdrawal and an act of Congress accomplishing the same purpose, where vested rights of the citizen are invaded. Where vested rights have attached through the lawful selection of public land, it is beyond the constitutional power either of the executive or Congress to destroy those rights, except by due process of law through proper condemnation proceedings, where the land is required for a public use.

It will be observed, however, that the restraining order issued by the court below is not in the nature of a mandatory order to require the Secretary to forthwith issue a patent, but to restrain him from canceling plaintiff's selection and from issuing a patent to Del Norte county until the plaintiff has been accorded an opportunity to establish his rights. It further restrains the Department from giving any force or effect to the executive orders or the act of Congress in the further consideration of this case. This part of the order, we think, is justified, under the concessions made by counsel for the Department in the motion to dismiss the bill. The case, therefore, is remanded to the Department by the decree of the court below for further consideration of plaintiff's case, subject to the restrictions therein contained.

The decision of the Secretary affirming the decision of the Commissioner of the General Land Office and sustaining the order canceling plaintiff's selection refers to certain reports of army engineers and acts of Congress for the improvement of Crescent City Harbor. Without expressing any opinion, we have not overlooked the bearing these reports and acts of Congress might have on this case had the question been properly raised, in so far as they suggest an intended appropriation of the island by the government for a public use.

The decree is affirmed, with costs.